UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY CARROLL, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>WELLS FARGO & COMPANY, et al.,<br><br>　　　　Defendants. | Case No. 15-cv-02321-EMC<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO STRIKE**<br><br>Docket No. 169 |

The above-referenced case is a putative class action for wage-and-hour violations. Currently pending before the Court is Plaintiffs' motion to strike Wells's amended answer (located at Docket No. 162) or, in the alternative, to strike a specific affirmative defense in that amended answer – *i.e.*, the defense that certain members of the putative class are barred from becoming a member of the class because of their agreements to arbitrate employment disputes with Wells.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** the motion to strike.

## I.   FACTUAL & PROCEDURAL BACKGROUND

As the parties are aware, this case has a somewhat complicated history. The highlights are identified below:

- Ms. Carroll initiated this wage-and-hour class action in state court in April 2015. Wells removed in May 2015. *See* Docket No. 1 (notice of removal). At this time, Wells did not move to compel arbitration, apparently because it had no arbitration agreement with Ms. Carroll.

- In July 2015, Wells filed its first motion to dismiss. *See* Docket No. 19 (motion). Wells withdrew the motion after Ms. Carroll filed an amended complaint. *See*

1      Docket No. 35 (notice).

2   • In August 2015, Wells moved to dismiss the amended complaint. *See* Docket No. 44 (motion). In October 2015, the Court granted in part and denied in part the motion and gave Ms. Carroll leave to amend. *See* Docket No. 50 (order).

• Ms. Carroll filed a second amended complaint ("SAC") in November 2015. *See* Docket No. 55 (SAC). Approximately two weeks later, Wells moved to partially dismiss that pleading. *See* Docket No. 56 (motion). In January 2016, the Court granted in part and denied in part the motion. In the same order, the Court gave Ms. Carroll leave to file a third amended complaint ("TAC"). *See* Docket No. 64 (order).

• Ms. Carroll filed her TAC in February 2016. *See* Docket No. 69 (TAC). **On February 19, 2016, Wells answered. At that time, Wells made no reference to a right to compel arbitration with respect to any putative class member.** *See* Docket No. 70 (answer to TAC). At that point, the pleadings appeared to be settled.

• In June 2016, a motion to intervene was filed by, *inter alia*, Ms. Layog. *See* Docket No. 73 (motion). In July 2016, the Court denied the motion to intervene but did relate Ms. Layog's case to Ms. Carroll's. Because of the overlap between Ms. Carroll and Ms. Layog's cases, the Court ordered the parties to meet and confer to discuss the possibility of consolidation. The Court also deferred setting a hearing on the motion to dismiss in Ms. Layog's case and vacated the deadlines (temporarily) on Ms. Caroll's class certification motion. *See* Docket No. 99 (order).

• In August 2016, Ms. Carroll moved to dismiss or stay Ms. Layog's case and further moved to file a fourth amended complaint ("4AC"), more specifically, to add an additional named plaintiff. *See* Docket Nos. 105, 107 (motions). The Court vacated the briefing and hearing schedules for the two motions and instructed the parties to meet and confer to discuss how the cases should proceed. *See* Docket

No. 112 (minutes).

- In October 2016, the Court severed the FLSA portion of the *Layog* case and transferred that portion to the District of New Jersey. The remaining part of *Layog* was consolidated with the *Carroll* case. *See* Docket No. 128 (order). Subsequently, the Court appointed Ms. Carroll's attorney lead counsel and instructed the parties to meet and confer regarding the filing of a consolidated amended complaint and a response thereto. *See* Docket No. 135 (order).

- In November 2016, Plaintiffs filed a consolidated complaint. *See* Docket No. 142 (complaint). This is the current operative complaint.

- **On January 6, 2017, Wells answered the consolidated complaint. Its answer made no reference to a right to compel arbitration with respect to any putative class member.** *See* Docket No. 160 (answer).

- **Less than a week later, on January 12, 2017, Wells filed an amended answer.** *See* Docket No. 162 (amended answer). **In the amended answer, Wells added a new defense related to arbitration**: "To the extent that Plaintiffs purport to assert a collective and/or class action, certain members of the putative collective and/or class are barred, in whole or in part, from becoming a member of any purported class or collective because of their agreement with Wells Fargo to resolve through individual arbitration all disputes arising out of their employment with Wells Fargo." Docket No. 162 (Amended Ans. ¶ 31).

- On February 2, 2017, Plaintiffs filed the pending motion to strike.

At the hearing, Wells confirmed that it had no agreement to arbitrate with any of the named plaintiffs, including Ms. Carroll. Wells also represented that it did not begin to have arbitration agreements with any members of the putative class until late 2015. Wells essentially conceded that, because it knew about the arbitration agreements as of late 2015, it could have included the arbitration defense at the time that it answered Ms. Carroll's TAC on February 19, 2016. It also could have included the arbitration defense when it answered the consolidated complaint on January 6, 2017.

3

According to the parties, the size of the putative class is approximately 40,000 individuals. Wells represented that approximately 3,000-3,500 of the individuals are subject to arbitration agreements which did not exist prior to late 2015.

## II. DISCUSSION

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). According to Wells, "the existence of an arbitration agreement is a legally sufficient affirmative defense and is thus not vulnerable to a motion to strike." Opp'n at 9 (emphasis omitted). Wells adds that, to the extent Plaintiffs are arguing that Wells has waived the defense, Plaintiffs are seeking a ruling that should not be adjudicated through a 12(f) procedure.

Wells's arguments are not without some merit. Nevertheless, those arguments are not an impediment to the Court's consideration of the crux of the dispute between the parties – *i.e.*, whether Wells's amended pleading is permissible under Federal Rule of Civil Procedure 15. The Court sees no reason to defer a ruling on this issue, especially as it has been fully briefed by the parties.

According to Wells, it had the right to amend its answer pursuant to Rule 15(a)(1). *See* Fed. R. Civ. P. 15(a)(1) (discussing amending "as a matter of course"). Alternatively, Wells asserts it should be given leave to amend pursuant to Rule 15(a)(2). *See* Fed. R. Civ. P. 15(a)(2) (addressing all other amendments).

Wells's argument that it had the right to amend as a matter of course under Rule 15(a)(1) is debatable. On the one hand, it may be argued that a defendant's right to amend as a matter of course is not renewed each time a plaintiff files an amended complaint particularly when the amendment to the answer is not responsive to a new matter raised in the amendment to the complaint. *Cf. United States ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 192-93 (1st Cir. 2015) (rejecting the contention that a plaintiff's right to amend as a matter of course is "renewed each time [a] defendant[] file[s] . . . either an answer or a responsive motion . . . to a particular version of the complaint"). On the other hand, here, Wells was faced with not just an amended complaint but also a consolidated complaint. Wells had never had an opportunity to answer Mr. Ponce and

4

Ms. Layog's claims before and had never previously amended an answer.

For purposes of this opinion, the Court need not resolve the 15(a)(1) issue. Assuming that Rule 15(a)(1) does not apply, the Court evaluates Wells's amended answer under Rule 15(a)(2), and, under that standard, the amendment is permissible.

Rule 15(a)(2) provides that a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Factors for a court to consider in deciding whether to give leave include undue delay in amending, bad faith in amending, futility in amending, and prejudice to the other side from the amendment. Prejudice is often the crucial factor. *See Dep't of Fair Empl. & Hous. v. Law Sch. Admission Council, Inc.*, No. C-12-1830 EMC, 2013 U.S. Dist. LEXIS 16942, at *9 (N.D. Cal. Feb. 6, 2013) (noting that "undue delay by itself 'is insufficient to justify denying a motion to amend'" and that "'it is the consideration of prejudice to the opposing party that carries the greatest weight'").

Here, Plaintiffs focus on undue delay, pointing that that Wells never moved to compel arbitration near the outset of this case and that Wells never mentioned the arbitration issue when it answered Ms. Carroll's complaint (the TAC) back in February 2016. The fact that Wells never moved to compel arbitration near the outset of the case is not damning. Wells did not have an arbitration agreement with Ms. Carroll, and thus could not move to compel as to her. Plaintiffs' better argument is that the arbitration issue could have been raised in the answer to Ms. Carroll's TAC in February 2016 (*i.e.*, that some putative class members are subject to arbitration agreements). Wells does appear to have delayed by about a year in bringing up the arbitration issue.

But undue delay does not automatically bar amendment. Implicitly recognizing such, Plaintiffs argue both futility and prejudice as reasons to deny amendment.[1] The futility and

---

[1] Plaintiffs also suggested that Wells's amendment was made in bad faith. According to Plaintiffs, Wells Fargo chose to litigate on the merits before this Court and at the same time was holding arbitration "in its back pocket" as an alternative forum should it receive unfavorable rulings from this Court. The Court finds this argument without merit. The arbitration agreements were not put into place until late 2015, at which point the 12(b)(6) proceedings had largely been completed. Also, the first time that Wells could have raised the arbitration defense was in its answer to Ms. Carroll's TAC; that answer was filed in February 2016. Plaintiffs have failed to point to any merits-related rulings made by this Court after February 2016, which gave an incentive to Wells to

5

prejudice arguments overlap.  Plaintiffs contend that amendment would be futile because Wells has waived the right to arbitrate and, in deciding whether there has been waiver, the Court must consider, *inter alia*, whether the party opposing arbitration has been prejudiced.[2]

With regard to waiver, the Ninth Circuit has noted as follows:

> Waiver of a contractual right to arbitration is not favored.  *Lake Communications, Inc. v. ICC Corp.*, 738 F.2d 1473, 1477 (9th Cir. 1984); *Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co.*, 572 F.2d 1328, 1330 (9th Cir. 1978).  Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements.  *See Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983) (as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the issue is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability); *Shinto Shipping*, 572 F.2d at 1330 (waiver is not favored and the facts must be viewed in light of the strong federal policy supporting arbitration agreements).  *See also Byrd*, 105 S. Ct. at 1242 (the purpose of the Arbitration Act was to ensure judicial enforcement of privately made agreements to arbitrate).  Because waiver of the right to arbitration is disfavored, "any party arguing waiver of arbitration bears a heavy burden of proof."  *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir. 1982); *Brown v. E.F. Hutton & Co., Inc.*, 610 F. Supp. 76, 79 (S.D. Fla. 1985).
>
> A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right[3]; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.  *See Shinto Shipping*, 572 F.2d at 1330 (the court "must be convinced not only that the appellee acted inconsistently with that arbitration right, but that the appellant was prejudiced by this action before we can find a waiver").  *See also Lake*

---

invoke the alternative forum of arbitration as a way to evade an adverse ruling.

To the extent Plaintiffs rely on *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930 (N.D. Cal. 2016), that reliance is misplaced.  The facts in *Lyft* are materially distinguishable.  Moreover, Plaintiffs' quote from *Lyft* has significant omissions, including the fact that the defendant explicitly waived its right to assert the arbitration provision against the named plaintiffs.  As noted above, here, the named plaintiffs are not subject to an arbitration agreement at all.

[2] The Ninth Circuit has noted that "waiver by litigation conduct is part of the first category of gateway issues" – *i.e.*, an issue for a court to decide and not an arbitrator.  *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016).

[3] "A party acts inconsistently with the arbitration right when the party 'substantially invokes he litigation machinery prior to demanding arbitration.'"  *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012).

6

> *Communications*, 738 F.2d at 1477 ("More is required than action inconsistent with an arbitration provision; prejudice to the party opposing arbitration must also be shown."); *ATSA of California, Inc. v. Continental Insurance Co.*, 702 F.2d 172, 175 (9th Cir. 1983) (inconsistent behavior alone is not sufficient; the party opposing arbitration must have suffered prejudice), *amended*, 754 F.2d 1394 (1985).

*Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

Not surprisingly, in their opening brief, Plaintiffs largely focused on the first two factors above, but the critical factor is really the third – *i.e.*, what prejudice has there been to Plaintiffs? *See Fisher*, 791 F.2d at 698 ("Nor is waiver established by the fact that Becker failed to raise as an affirmative defense the agreement to arbitrate. Absent a showing of prejudice by the Fishers, the bare fact that Becker failed to raise an affirmative defense is inadequate by itself to support a claim of waiver of arbitration.").

In a 2016 decision, the Ninth Circuit has explained what prejudice means in the context of waiver of the right to arbitration.

> To prove prejudice, plaintiffs must show more than "self-inflicted" wounds that they incurred as a direct result of suing in federal court contrary to the provisions of an arbitration agreement. Such wounds include costs incurred in preparing the complaint, serving notice, or engaging in limited litigation regarding issues directly related to the complaint's filing, such as jurisdiction or venue. In contrast, in order to establish prejudice, the plaintiffs must show that as a result of the defendants having delayed seeking arbitration, they have incurred costs that they would not otherwise have incurred, that they would be forced to relitigate an issue on the merits on which they have already prevailed in court, or that the defendants have received an advantage from litigating in federal court that they would not have received in arbitration

*Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) – *e.g.*, gaining information about the other side's cases that could not have been gained in arbitration.

With respect to costs, the Ninth Circuit underscored that,

> [w]hen a party has expended considerable time and money due to the opposing party's failure to timely move for arbitration and is then deprived of the benefits for which it has paid by a belated motion to compel, the party is indeed prejudiced. At that point, the cost and expenses of litigating in district court are no longer simply "self-inflicted" wounds on the party of the plaintiffs because the defendant's actions have shown that they, too, have sought at least for some period of time to attempt to resolve the issue in court rather than in arbitration.

7

*Id.* at 1127.

In *Martin* itself, the Ninth Circuit concluded that there was prejudice:

> [B]ecause the defendants failed to move for arbitration for seventeen months, the plaintiffs expended considerable money and effort in federal litigation, including conferring with opposing counsel regarding how to conduct the case on the merits, analyzing how to approach discovery and class certification, and contesting the defendants' motion to dismiss on the merits. As discussed above, even if the parties exchanged the same information in court as they would have in arbitration, the process of doing so in federal court likely cost far more than determining the answer to the same question in arbitration. The unnecessary, additional costs incurred by the plaintiffs as a result of the defendants' dilatory motion to compel constitutes obvious prejudice.

*Id.* at 1127-28 (adding that "the plaintiffs have [also] shown prejudice here because, should this case go to arbitration, they would have to relitigate a key legal issue on which the district court has ruled in their favor"); *see also Garcia*, 699 F.3d at 1278 (stating that "'[p]rejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate[;]' [t]here is no doubt that these plaintiffs expended substantial sums of money in conducting this litigation"); *Southeastern Stud & Comps., Inc. v. Am. Eagle Design Build Studios, LLC*, 588 F.3d 963, 969 (8th Cir. 2009) (stating that "'[a] party is so prejudiced when the "parties use discovery not available in arbitration, when they litigate substantial issues on the merits, or when compelling arbitration would require a duplication of efforts"'"). Thus, one key factor in determining prejudice is whether the plaintiff incurred time and costs that would have been obviated had the right to arbitration been asserted earlier.

Invoking *Martin*, Plaintiffs argue in their reply brief that they would be prejudiced by Wells's arbitration defense because they have expended considerable money and effort litigating this case in a judicial, as opposed to an arbitral, forum. *See, e.g.*, Reply at 9 (arguing that the cost of litigating before an arbitrator would be cheaper). But Plaintiffs' argument falls short because Wells's arbitration defense would not take the entirety of this case from a judicial to an arbitral forum. Rather, as noted above, only 3,000-3,500 out of approximately 40,000 putative class members (7.5-8.75% of the putative class) may be subject to an arbitration agreement. Thus,

8

Plaintiffs would likely have incurred much or most of the litigation expenses they did even if the arbitration issue had been brought up earlier because even if a portion of the putative class were directed to arbitration and excluded from the class, this class action case would still proceed largely intact.

At the hearing, Plaintiffs argued for the first time a new ground for prejudice. More specifically, Plaintiffs asserted that a significant part of their discovery has been gutted as a result of the arbitration defense because its class analysis was based on a 25% sampling and that its statistical modeling might no longer apply if a portion of the class is excluded. The Court is not persuaded. Plaintiffs submit no evidence that any such exclusion of a relatively small portion of the class impairs or changes their expert's analysis. If Plaintiffs ultimately demonstrate that their expert's analysis of the sampling would no longer be valid if the class size is reduced and thus needs to be redone, any such prejudice may be addressed at a later time. The Court's ruling is without prejudice to *e.g.*, a request or motion for fee shifting with respect to any such costs.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion to strike.

This order disposes of Docket No. 169.

**IT IS SO ORDERED**.

Dated: March 13, 2017

_____
EDWARD M. CHEN
United States District Judge